UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

PAUL MAZAK,

        Plaintiff,

-vs-                                         Case No. 5:07-cv-422-Oc-10GRJ

KAM R. JOHNSON,

        Defendant.
_____

## O R D E R

On July 7, 2007, Defendant Kam R. Johnson, an officer with the Florida Fish and Wildlife Conservation Commission, arrested Plaintiff Paul Mazak for obstruction of law enforcement without violence, as well as fleeing and eluding a law enforcement officer by boat. On September 13, 2007, Mazak filed this action consisting of a single claim against Johnson in his individual capacity under 42 U.S.C. § 1983,[1] alleging that there was no probable cause for his arrest, in violation of his Fourth and Fourteenth Amendment rights under the United States Constitution. The case is presently before the Court for consideration of Johnson's Motion for Summary Judgment, (Doc. 27), to which Mazak has filed a response in opposition. (Doc. 30). As discussed more fully below, the Court concludes that probable cause existed for Mazak's arrest on the charge of feeling and

---

[1] On July 30, 2008, the Court dismissed all claims against the Defendant in his official capacity. (Doc. 19).

eluding a law enforcement officer and, therefore, summary judgment in favor of Johnson is warranted.

## Statement of Undisputed Facts

On July 7, 2007, Mazak was hosting an extended Fourth of July celebration for his friends and family at his 40 acre boathouse property in Citrus County, Florida. The property borders the Florida Department of Environmental Protection's property on one side and runs along the north bank of the Crystal River. During the weekend festivities, Mazak and his family used several boats and watercrafts on the river.

In the early evening of July 7th, Mazak's cousin Kevin Burnett was driving a Ski Doo personal watercraft (also known as a jet ski) on the river by Mazak's property. Johnson, a law enforcement officer with the Florida Fish and Wildlife Conservation Commission, clocked Burnett on radar as speeding in a manatee zone, and stopped Burnett to issue him a ticket. Johnson tied the Ski Doo to his patrol boat, and eventually tied his patrol boat to a State of Florida service dock located on the property of the Crystal River Preserve State Park, near the office of the Department of Environmental Protection and adjacent to Mazak's property.[2] Johnson then proceeded to issue Burnett a citation for speeding.

---

[2] Johnson tied himself to the dock because both his and Burnett's watercrafts were quickly floating up the river with the strong incoming tide.

2

Because Burnett was driving the Ski Doo without his drivers license or registration, the ticketing process took longer than normal.[3]

During this time, Mazak watched Johnson stop Burnett and secure the patrol boat to the dock. After approximately 15 to 20 minutes had passed, Mazak became concerned that Burnett may need some additional information or assistance. Mazak and his teenaged daughter Rebecca left their property and navigated over to the dock in Mazak's airboat to see if he could be of any help.

When Mazak arrived at the dock, he instructed Rebecca to stay in the airboat and hold onto a piling to avoid being carried away by the current. Mazak then stepped onto the dock, but held onto the fan cage of the airboat with one hand. Mazak was standing to one side of Johnson while Burnett - who at all times remained on the Ski Doo - was on Johnson's other side. Mazak began to ask his cousin what was going on and if he could provide any assistance, but was cut off by Johnson, who told Mazak that he had to leave immediately. Mazak contends that Johnson told him that he had just given Mazak's cousin a ticket, that "it was done" and "it was over," and that Mazak needed to leave. Mazak responded that he was not there to argue or to fight, but just wanted to know if he could provide any help. Johnson repeated that Mazak needed to leave immediately, informed him that the dock was not a public dock, and told Mazak that if he did not leave, he would be arrested.

---

[3]Burnett is a resident of Louisiana, and the Ski Doo was registered to another family member who is a resident of Georgia.

At the time Mazak arrived at the dock, Johnson had completed the citation and handed it to Burnett, who had signed it. Johnson, however, contends that the citation process was not yet complete, because he had not explained to Burnett the options for paying the ticket or appearing in court, had not told Burnett he was free to leave, and had not untied the Ski Doo from the patrol boat. Johnson also claims that he told Mazak he was interfering in the citation process. Mazak and Burnett both testified at their depositions that the citation process was over, and that Johnson repeatedly said to both of them that it was over.

In response to Johnson's orders to leave, Mazak stated that he did not have to leave, that the dock was paid for by the taxpayers of the State of Florida and therefore it was a public dock, and as a taxpayer he would only leave when he was ready to leave.[4] After Johnson again told Mazak to leave and Mazak refused, Johnson got out of his patrol boat and stood on the dock. He again told Mazak that he had given Burnett a ticket and asked

---

[4] Johnson argues that the dock was not for public use, and therefore Mazak was unlawfully trespassing on the dock. There were three signs posted at or near the dock stating that it was for service boats only, fishing was prohibited, and that the dock was reserved for federal and state agency use during emergencies. Two of the signs were posted on the end of the dock at the shoreline, and were facing in-land. The other sign was on the land approaching the dock, also facing in-land. None of the signs faced the river, and there were no signs expressly stating "no trespassing." Moreover, there is no evidence that anyone has ever been cited for trespassing on that dock, and Johnson himself testified that he would not have cited or arrested Mazak for trespassing.

Mazak to leave. Johnson also informed Mazak that his airboat was blocking the dock, preventing Johnson from removing his patrol boat from the water.[5]

Johnson then told Mazak to leave or he would be sprayed with pepper spray. When Mazak still refused to move, Johnson removed his pepper spray from its holster, held it with two hands as if it was a pistol directed towards Mazak, and began counting down from 10. Mid-way through the count, a shrimping boat passed by, and Mazak turned to speak with the boat captain for a few minutes. During this time, Johnson paused his countdown and lowered his pepper spray. After the shrimping boat left, Mazak turned back around to face Johnson, who discharged his pepper spray onto Mazak's face.

Mazak contends that he was never told that he was under arrest until after Johnson pepper sprayed him. Johnson, however, asserts that he told Mazak he was under arrest and to put his hands behind his back immediately prior to discharging the pepper spray. In either case, instead of submitting to arrest, Mazak jumped back into his airboat, instructed Rebecca to let go of the dock's piling, and departed for his property. Johnson quickly untied his patrol boat from the Ski Doo and the dock, and gave pursuit, with his police lights and siren activated.

---

[5] By this time, it was near the end of Johnson's shift and he wanted to load his patrol boat onto his trailer and leave. Mazak strongly asserts that he never blocked Johnson's access to the dock, or prevented Johnson from using the dock to load his patrol boat onto his trailer.

Mazak increased his speed, far exceeding the posted 25 mph limit for that area, and returned to his property.[6] While at the property, Johnson attempted to arrest Mazak again, and sprayed Mazak with pepper spray at least one additional time. Mazak refused to stop and instead walked inside his boathouse and locked the door. Mazak refused to come out until another Fish and Wildlife Officer, John Jones, arrived at the scene. Jones and Mazak had met at least once before, and Jones was able to negotiate Mazak's peaceful arrest, so long as Jones was the one who took Mazak into custody. Jones took Mazak to the Citrus County Jail where he remained for approximately five hours.

Mazak testified that Johnson's tone and mannerisms throughout their interaction on the dock were extremely rude, and that Johnson did not give Mazak a chance to speak to his cousin. Mazak also claims that he remained calm at all times, and never raised his voice, even though he was upset by Johnson's insulting behavior. On the other hand, Johnson claims that he felt threatened by Mazak, who was acting in an assertive manner and had an angry and argumentative tone to his voice. However, it is undisputed that Mazak never took any steps towards Johnson, never threatened him, and never raised or balled up his fists. While there is some evidence that Mazak had been drinking beer prior to his arrival at the dock, both sides agree that Mazak was not intoxicated.

Johnson ultimately charged Mazak with obstruction of law enforcement without violence, and fleeing and eluding a law enforcement officer while on a boat in violation of

---

[6] Mazak contends that he increased his speed to prevent Johnson from ramming into his airboat. Johnson disputes that he ever came close to Mazak's boat during the pursuit.

6

Florida Statutes §§ 843.02 and 843.18. The charges were later dropped, and Mazak instituted this lawsuit.

## **Summary Judgment Standard**

Pursuant to Federal Rule of Civil Procedure 56(c), the entry of summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." In applying this standard, the Court must examine the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits and other evidence in the record "in the light most favorable to the nonmoving party." Samples on Behalf of Samples v. Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). As the Supreme Court held in Celotex Corp. v. Catrett, 477 U.S. 317 (1986), the moving party bears the initial burden of establishing the nonexistence of a triable issue of fact. If the movant is successful on this score, the burden of production shifts to the non-moving party who must then come forward with "sufficient evidence of every element that he or she must prove." Rollins v. Techsouth, 833 F.2d 1525, 1528 (11th Cir. 1987). The non-moving party may not simply rest on the pleadings, but must use affidavits, depositions, answers to interrogatories, or other admissible evidence to demonstrate that a material fact issue remains to be tried. Celetex, 477 U.S. at 324.

**Discussion**

Johnson seeks summary judgment on the grounds that probable cause existed for Mazak's arrest for obstructing law enforcement without violence in violation of Fla. Stat. § 843.02;[7] fleeing and eluding by boat in violation of Fla. Stat. 843.18; and that probable cause supported an arrest of Mazak for trespassing in violation of Fla. Stat. 810.09.[8] Johnson alternatively argues that he is entitled to qualified immunity because "arguable probable cause" exists for all three violations. See Kingsland v. City of Miami, 382 F.3d

---

[7]Fla. Stat. § 843.02 provides:

> Whoever shall resist, obstruct, or oppose any officer . . . or other person legally authorized to execute process in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree, . . . .

[8]Fla. Stat. § 810.09 provides, in relevant part:

> (1)(a) A person who, without being authorized, licensed, or invited, willfully enters upon or remains in any property other than a structure or conveyance:
>
> 1. As to which notice against entering or remaining is given, either by actual communication to the offender or by posting, fencing, or cultivation . . . commits the offense of trespass on property other than a structure or conveyance.
> . . . .
>
> (2)(a) Except as provided in this subsection, trespass on property other than a structure or conveyance is a misdemeanor of the first degree, . . . .
>
> (b) If the offender defies an order to leave, personally communicated to the offender by the owner of the premises or by an authorized person, . . . the offender commits a misdemeanor of the first degree, . . . .

1220, 1232 (11th Cir. 2004) (an officer is entitled to qualified immunity on a claim for false arrest where that officer had "arguable probable cause.").[9]

Taking the evidence in the light most favorable to Mazak, the Court finds that numerous issues of material fact remain in dispute with respect to Mazak's arrest for obstruction without violence, and the claimed trespassing violation. Such issues of fact include, but are not limited to: (1) whether Johnson had completed the citation process prior to Mazak's arrival on the dock; (2) whether Mazak was obstructing Johnson's ability to conclude the citation process while on the dock; (3) whether Mazak was acting in a threatening or obstructive manner; (4) whether notice was given to Mazak that he was trespassing on the dock; (5) whether persons were, in fact, precluded by state law from standing on the dock, or if persons were merely prohibited from fishing and/or boating off the dock; (6) whether Mazak was interfering with Johnson's ability to remove his patrol boat from the river; and (7) whether reasonable officers placed in the same circumstances would also believe that probable cause existed for Mazak's arrest and/or for a trespassing violation. These fact issues preclude a finding at the summary judgment stage that Johnson had probable cause to arrest Mazak for these two offenses, and also preclude a finding that Johnson had "arguable probable cause" such that qualified immunity would apply. See Davis v. Williams, 451 F.3d 759 (11th Cir. 2006)

---

[9]There is no dispute that Johnson was performing his discretionary functions as a Fish and Wildlife Officer.

The material facts are not in dispute however, with respect to Mazak's arrest for fleeing and eluding a law enforcement officer. Florida Statute § 843.18(1) provides that

> It is unlawful for the operator of any boat plying the waters of the state, having knowledge that she or he has been directed to stop such vessel by a duly authorized law enforcement officer, willfully to refuse or fail to stop in compliance with such directive or, having stopped in knowing compliance with such a directive, willfully to flee in an attempt to elude such officer. Any person violating this section is guilty of a felony of the third degree . . . .

Mazak admits that after Johnson sprayed him with pepper spray and stated that he was under arrest, he jumped back into his boat and sped back to his property. Mazak further admits that Johnson pursued him back to his property, that Johnson had his sirens and police lights on during the chase, and that Mazak refused to submit to arrest until Officer John Jones arrived at the scene. Mazak also has not raised any defense for his actions, either at his deposition or in opposition to summary judgment.[10]

These facts, even when taken in the light most favorable to Mazak, clearly constitute a violation of § 843.18(1) and are more than enough to establish the existence of probable cause for his arrest. This is so even if the Court were to determine as a matter of law that

---

[10]For example, Mazak has not made a claim of excessive force, and has made no argument that he felt threatened by Johnson, or that he fled out of necessity or duress. See e.g. Williams v. Sirmons, 563 F. Supp. 2d 1315 (M.D. Fla. 2008), *aff'd in part, rev'd in part on other grounds*, 307 Fed. Appx. 354 (11th Cir. Jan. 13, 2009). Instead, the evidence is undisputed that Mazak merely felt insulted and angered by Johnson's actions, and that Johnson was trying to arrest him for no reason. The evidence also establishes that Mazak was not significantly impacted by the pepper spray. The only comment Mazak makes on this issue is a statement in his opposition brief that Johnson's conduct was unconstitutional and a battery, and that his arrest for fleeing and eluding is "the fruits of the defendant's unlawful and unconstitutional conduct." Mazak has not provided any legal authority for this statement, and it is directly contradicted by applicable Florida law.

probable cause did not exist for the underlying charge of obstruction without violence. It is the law in Florida that an individual cannot resist even an unlawful arrest by fleeing and eluding officers. Jackson v. State, 463 So. 2d 372, 373 (Fla. 5th DCA 1985) (the offense of fleeing and eluding a police officer "does not require the lawfulness of the police action as an element of the offense"); Green v. State, 530 So. 2d 480, 481 (Fla. 5th DCA 1988) (same); State v. McCune, 772 So. 2d 596 (Fla. 5th DCA 2000) ("The law of the District is that regardless of the legality of the initial stop (or attempted stop), the statutory offense of fleeing and eluding does not require the lawfulness of the police action as an element of the offense.").[11] See also Rankin v. Evans, 133 F.3d 1425, 1435 (11th Cir. 1998) (the standard for determining whether probable cause exists is the same under Florida and federal law). Further, under federal and state law, "the validity of an arrest does not turn on the offense announced by the officer at the time of the arrest." Lee v. Ferraro, 284 F.3d 1188, 1196 (11th Cir. 2002). Thus, so long as probable cause existed to arrest Mazak for any offense, his arrest and detention are valid even if probable cause was lacking as to some offenses, or even all announced charges. Id.

Based on the undisputed material facts of this case, the Court finds as a matter of law that probable cause existed to arrest Mazak for violating Fla. Stat. § 843.18(1), and,

---

[11]There are no decisions in Florida interpreting Fla. Stat. § 843.18(1). The decisions cited in the text interpret Fla. Stat. § 316.1935(1), which addresses fleeing and eluding a law enforcement officer by motor vehicle. Section 316.1935(1) is identical to § 843.18(1), with the exception of the type of vehicle used to elude law enforcement. Accordingly, the Court concludes that the interpretations and applications of § 316.1935(1) apply with equal force to asserted violations of Fla. Stat. § 843.18(1).

therefore, summary judgment shall be granted in favor of Johnson and against Mazak. See Marx v. Gumbinner, 905 F.2d 1503, 1505-06 (11th Cir. 1990) (existence of probable cause is an absolute bar to a section 1983 action for false arrest).[12]

## Conclusion

Accordingly, upon due consideration it is hereby ORDERED that Defendant Kam R. Johnson's Motion for Summary Judgment (Doc. 27) is GRANTED. The Clerk is directed to enter Judgment in favor of Defendant Kam R. Johnson and against Plaintiff Paul Mazak, terminate all pending motions, and close the file.

IT IS SO ORDERED.

DONE and ORDERED at Ocala, Florida this 18th day of May, 2009.

*[signature]*

UNITED STATES DISTRICT JUDGE

Copies to: Counsel of Record

---

[12] Because actual probable cause existed for Mazak's arrest, the Court need not go further and conduct a qualified immunity analysis on the fleeing and eluding charge. See Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").